THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JERALD DAVIS, Defendant-Appellant.

Third District   No. 3—88—0468

Opinion filed September 27, 1989.—Rehearing denied November 7, 1989.

Law Offices of John H. Bisbee, of Macomb (John H. Bisbee, of counsel), for appellant.

William Poncin, State's Attorney, of Macomb (Judith Z. Kelly, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SCOTT delivered the opinion of the court:

Defendant Jerald Davis appeals from the judgment entered by the circuit court of McDonough County following jury verdicts of guilty on four counts of theft as defined in section 16—1(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 16—1(a)(1)). Davis was sentenced to 30 months' probation, 30 days' periodic imprisonment in the McDonough County jail, and ordered to pay restitution in the amount of $3,088.16.

Davis, a licensed insurance producer, was engaged in the practice of writing credit life and/or disability insurance policies insuring loan customers of the First National Bank of Macomb. The bank was primary beneficiary of the policies, and the policies were financed by adding the premium to the sum borrowed. Commissions were paid either to the bank when it initiated the sale of the policies, or to other entities, e.g., a retailer whose installment contracts were sold to the bank and provided for purchase of a policy, when they initiated the sale.

The record reveals if a borrower agreed to purchase a policy at the bank's initiation, the bank calculated the premium and added it to the loan balance. The premium, minus the bank's commission, then would be deposited into Davis' escrow accounts when the loan proceeds were disbursed. Davis' escrow accounts were maintained at the bank, and its officers would deposit the premium directly into his account. Information needed to issue the policy, e.g., borrower's name, address, age, and terms of the loan, would be provided by Davis and he would forward the net premium and policy application to the insurance company for policy issuance.

If another entity initiated the sale of a policy through its retail installment contract, the bank would issue a money order payable to the entity for the premium at the time the bank purchased the contract. The entity then would pay Davis the premium minus its commission. In the latter instance, the record is unclear as to whether the entity or the bank assumed responsibility for providing Davis with information concerning the borrower and loan required to obtain issuance of a policy.

In an effort to collect an indebtedness Davis owed the bank on a delinquent real estate loan, the bank applied a set off against his insurance escrow accounts closing the accounts in their entirety in the late summer of 1985. Following discovery, in May of 1985, that certain borrowers' credit insurance policies had not been issued, the bank reported the matter to the McDonough County State's Attorney's office for criminal prosecution. The bank, however, did not demand that Davis cover the losses it incurred, e.g., refund of unearned premium, cost of obtaining new policies, payment of death claim, etc., following its discovery of the nonissuance of certain policies.

On August 5, 1986, Davis was charged with 13 counts of theft in violation of section 16—1(a)(1) of the Criminal Code of 1961—"Theft" (Ill. Rev. Stat. 1987, ch. 38, par. 16—1(a)(1))—and 13 counts of breach of fiduciary duty in violation of section 508.1 of the Illinois Insurance Code—"Fiduciary Duties" (Ill. Rev. Stat. 1987, ch. 73, par. 1065.55—

1)—stemming from his failure to procure insurance policies for certain loan customers after premium deposits were made either directly to his escrow account by the bank, or deposited by him from funds received from other entities. All counts of breach of fiduciary duty and all but five counts of theft were dismissed prior to trial.

At Davis' arraignment and in response to his motion for disclosure pursuant to Supreme Court Rule 412, "Disclosure to Accused" (107 Ill. 2d R. 412), a pretrial discovery order was entered for both Davis and the prosecution. Davis objected to the order granting discovery to the prosecution on grounds the People's oral motion for discovery did not comply with Supreme Court Rule 413(d), "Disclosure to Prosecution—Defenses" (107 Ill. 2d R. 413(d)), requiring a written motion. During a protracted motion practice wherein the People continuously moved for compliance with the entered order and with Davis objecting to the same, Davis supplemented his refusal to comply on grounds the order granting the People discovery violated his rights under the fifth, sixth, and fourteenth amendments of the United State Constitution (U.S. Const., amends. V, VI, XIV), article I, sections 2, 8, and 10, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, §§2, 8, 10), and section 3—1 of the Criminal Code of 1961—"Presumption of Innocence and Proof of Guilt" (Ill. Rev. Stat. 1987, ch. 38, par. 3—1). He further cited the pending decision of *Taylor v. Illinois* (1988), 484 U.S. 400, 98 L. Ed. 2d 798, 108 S. Ct. 646, which, when entered, would define the power of Illinois courts to impose sanctions for failure to comply with State discovery procedures pursuant to Supreme Court Rule 415(g), "Regulation of Discovery—Sanctions" (107 Ill. 2d R. 415(g)), as a rationale for his continuing noncompliance. Davis, however, did inform the People and trial court he intended to advance no affirmative defense to the charges and that he would not call witnesses whose testimony would be outside the scope of the People's burden of going forward and proof.

On January 22, 1988, the trial court ordered Davis to comply on or before January 25 with the order entered at the arraignment or suffer exclusion of any evidence subject to disclosure under the terms of the order. He thereafter filed a motion for reconsideration or continuance and set the motion for hearing on January 28. Upon learning of the decision entered in *Taylor v. Illinois* (1988), 484 U.S. 400, 98 L. Ed. 2d 798, 108 S. Ct. 646, permitting exclusion of defense witnesses for violation of discovery orders, Davis informed the People on January 27 he would comply with the discovery order. In response thereto, the People filed a motion *in limine* requesting, *inter*

*alia,* that Davis be precluded from presenting testimony from witnesses not disclosed by January 25.

At hearing on both motions, Davis submitted a list of character witnesses and advised the trial court the witnesses would testify only as to his reputation and honesty in business affairs. The trial court denied Davis' motion for reconsideration or continuance and granted the People's motion *in limine.* No showing of prejudice resulting from Davis' failure to comply was made by the People and the record reveals that following the hearing the People interviewed at least one rebuttal character witness.

A jury trial was held in February 1988 on the remaining five counts of theft, with the court directing a verdict in favor of Davis on one count at the close of the People's case in chief. Following Davis' testimony, the defense rested. Davis' motion for a directed verdict was denied, and the jury returned verdicts of guilty on the remaining four counts. Two counts stemmed from Davis' failure to procure insurance on borrowers, whose premiums were directly deposited into his escrow account by a bank officer, with two counts stemming from his failure to procure insurance on borrowers after he deposited premiums received from a local dealership, Happy Camping of Macomb, Illinois, following its sale of retail installment contracts to the bank. Following denial of Davis' post-trial motion for entry of judgment notwithstanding verdict, or in the alternative, for a new trial or in arrest of judgment, judgment was entered on the verdicts.

On appeal, Davis requests this court reverse his conviction and remand for a new trial based on one or more of the following contentions. First, that the trial court's sanction denying him the right to call character witnesses for failure to comply in a timely manner with court ordered discovery infringed his rights guaranteed under the compulsory process clause of the sixth and fourteenth amendments to the United States Constitution and corresponding provisions of the Illinois Constitution, and violated his right of due process under the fourteenth amendment to the United States Constitution. Second, given names of his character witnesses were disclosed to the People four days prior to trial and no showing of prejudice was made by his failure to disclose the names earlier, the sanction was improperly imposed. Third, given the People and trial court were advised his defense would be negative, the discovery order requiring disclosure of witnesses and the ensuing sanction was an infringement upon his presumption of innocence guaranteed by the due process clause of the fourteenth amendment to the United States Constitution, the cor-

responding provisions of the Illinois Constitution, and section 3—1 of the Criminal Code of 1961. Fourth, substance of testimony given at trial by three prosecution witnesses concerning three contested and critical issues of fact concerning his knowledge that insurance was requested or that he had sufficient information to procure policies was not disclosed pursuant to Supreme Court Rule 412 resulting in surprise and prejudice to Davis. Fifth, he was denied the effective assistance of counsel, when his counsel failed to provide the People with names of character witnesses in a timely manner resulting in the trial court's imposition of the sanction excluding the witnesses.

In the alternative, Davis requests this court vacate the trial court's judgment and discharge him on the grounds that (1) the evidence adduced at trial proved only the breach of an obligor-obligee duty and not theft as defined by section 16—1(a) of the Criminal Code of 1961, or (2), as a matter of law, the evidence adduced was not sufficient to establish beyond a reasonable doubt the elements of the crime of theft.

As the evidence adduced at trial revealed only the following, it is not necessary to consider Davis' contentions concerning the trial court's imposition of the sanction of witness exclusion, infringement on presumption of innocence when a discovery order requires disclosure beyond revelation that an accused's defense is strictly negative, the People's compliance with the letter and intent of mandated disclosure to the accused, or the issue of effective assistance of counsel.

The evidence showed that on two occasions a bank officer solicited insurance, collected the premium and deposited it into Davis' escrow accounts, and thereafter failed to forward Davis information required to obtain policy issuance. Further, on two occasions involving the bank's purchase of Happy Camping's retail installment contracts, which included a request for insurance, Davis accepted the premium from Happy Camping and deposited it into his escrow accounts. In the latter two instances, he did not receive any information from the bank concerning the borrower or loan terms, nor did he receive a copy of the loan contract from Happy Camping containing this information on one transaction, whereas it was disputed he may have received a contract on the other transaction. No evidence was presented that the premiums deposited were withdrawn by Davis, and the premiums apparently remained in the accounts until the bank closed the accounts in set-off against an unrelated delinquent loan.

This evidence establishes clearly that the bank and Happy Camping, through their solicitation of insurance, created a fiduciary relationship between themselves and their respective borrowers. (Ill.

Rev. Stat. 1987, ch. 17, par. 2001 *et seq.*) They were obligated, therefore, to ensure that insurance was procured or risk breach of their fiduciary duties. Further, in the event such insurance was not issued, they were required, *inter alia*, to refund unearned premium or credit the borrower's account. Ill. Rev. Stat. 1987, ch. 73, par. 767.58(c); ch. 121½, par. 511.

■ In endeavoring to honor their fiduciary duty, a contractual relationship was established with Davis obligating him to procure insurance in consideration of the premiums deposited. Davis' failure to obtain the policies, whether contributed in part or whole by the bank's or Happy Camping's failure to inform Davis concerning details of the loans, is properly characterized as a breach of a contractual relationship, obligor/obligee, owing the bank and/or Happy Camping as opposed to a criminal offense of theft as defined and chargeable under section 16—1 of our criminal code. (Ill. Rev. Stat. 1987, ch. 38, par. 16—1. See also *People v. Becker* (1953), 414 Ill. 291, 111 N.E. 2d 491; *People v. Robinson* (1933), 352 Ill. 596, 186 N.E.2d 484.) Davis' clearly established failure to procure the policies may give rise to a cause of action in the bank and/or Happy Camping for breach of contract, and in the borrowers against their fiduciaries for breach of fiduciary duty. It is well settled that breach of an obigor/obligee relationship does not support a charge of theft as presented herein. *People v. Buffalo Confectionery Co.* (1980), 78 Ill. 2d 447, 401 N.E.2d 546.

Accordingly, we hold as a matter of law the evidence presented herein does not constitute theft as defined in section 16—1 of our criminal code and therefore reverse the judgment of the trial court of McDonough County and order Davis discharged.

Reversed.

HEIPLE and STOUDER, JJ., concur.